IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RUE21 HOLDCO, INC., *et al.*,[1] | Case No. 24-10939 (BLS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF COLIN M. ADAMS IN SUPPORT OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO ASSUME THE CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, AND (III) GRANTING RELATED RELIEF**

I, Colin M. Adams, hereby declare, under penalty of perjury, as follows:

1.  I am a Practice Lead at Riveron RTS, LLC ("Riveron"), which has its principal office at 461 Fifth Avenue, 12th Floor, New York, NY 10017. In the weeks leading up to the Petition Date, Riveron has served as financial advisor to New rue21 Holdco, Inc. and its debtor affiliates (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases").

2.  I submit this declaration (the "Declaration") in support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales and (III) Granting Related Relief (the "Motion"), which was filed concurrently herewith.[2]

3.  I am generally familiar with the Debtors' business, financial conditions, policies and procedures, day-to-day operations, and books and records. Except as otherwise indicated, the statements in this Declaration are based on: (i) my personal knowledge of the Debtors' operations;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, are New rue21 Holdco, Inc. (4668), r21 Holdings, Inc. (1618), New rue21 Intermediate, Inc. (9166), New rue21, LLC (4521), New RSC, LLC (4690), and r services llc (9425). The Debtors' headquarters is located at 800 Commonwealth Drive, Warrendale, PA 15086.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

(ii) my review of relevant documents; (iii) information provided to me by employees of Riveron working under my supervision; (iv) information provided to me by, or discussion with, members of the Debtors' management team, other employees, or the Debtors' other advisors; or (v) my general experience and knowledge.

4.     I am over the age of 18 and am duly authorized to submit the Declaration on behalf of the Debtors and in support of the Motion. If called upon to testify, I could and would testify to the facts set forth herein.

## PROFESSIONAL BACKGROUND AND QUALIFICATIONS

5.     Riveron is a business advisory firm specializing in accounting advisory, corporate restructurings, operations improvement, dispute resolution, tax advisory, and valuation. Riveron has extensive experience working with and for distressed companies in complex financial and operational restructurings, both out-of-court and in chapter 11 proceedings throughout the United States. Riveron professionals have advised debtors, creditors, and equity constituents in numerous reorganizations, which advisory services have included financial analysis and budgeting, forecasting, cash management, operational assessments and improvements, dispute litigation advisory, and interim management services. Riveron and Riveron professionals have been involved in numerous chapter 11 and international bankruptcies in capacities including advisor to official committees of creditors, advisor to official equity committees, advisor to secured and unsecured holders of debt, advisor to debtors, and serving as a Chief Restructuring Officer.

6.     I am a newly appointed Practice Lead at Riveron. I have more than 20 years of experience in the restructuring sector, having been both an advisor and a principal in numerous U.S. and European restructurings. Prior to joining Riveron, I served as a Partner at Ducera Partners LLC for one year. Prior to Ducera Partners LLC, I spent approximately six years as a Senior Managing Director of M3 Partners, where I focused on companies experiencing financial,

2

operational or strategic transitions in an effort to maximize value for stakeholders. Prior, I served as a Managing Director at Morgan Stanley & Co., LLC in New York and London from 2010 to 2017 and as a Managing Director at Citadel Securities in New York from 2009 to 2010. Earlier in my career, I was a partner at Kirkland & Ellis LLP in New York. I have also held numerous independent director roles on the board of directors of companies across a wide range of industries, such as von Drehle Corporation, Ryze Renewables and, most recently, CAMP. I hold a J.D. with a Certificate in Business Law from the University of California, Los Angeles School of Law and graduated with an A.B. in Economics and History from Duke University.

7. Over the course of my career, I have served as an advisor, attorney, officer, or investor in chapter 11 cases such as Akorn Holdings, LLC, American Airlines, Belk, Bertucci's, Cengage Learning, Colt Defense, Cornerstone Propane, Craftworks, Energy Future Holdings, Extended Stay Hotels, General Motors, GST Auto Leather, Neiman Marcus, Paper Source, Relativity Media, Remington Outdoor, Sears, Solutia, Tailored Brands, Tronox, and WorldCom.

8. Riveron has a wealth of experience providing advisory and interim management services for companies undergoing transformations, turnarounds, and restructurings. Its clients include companies, creditors, corporate parents, and financial sponsors as well as acquirers of underperforming businesses. Riveron and its professionals have extensive experience working with financially troubled companies across a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Major in-court restructurings in which Riveron has been involved include: In re Armstrong, No. 22-10426 (MFW) (Bankr. D. Del. May 8, 2022); In re Stimwave Tech., Inc., No 22-10541 (KBP) (Bankr. D. Del. June 15, 2022); Eagle Valley Energy Partners, LLC, No. 23-10034 (SMR) (Bankr. W. Tex. Jan. 27, 2023); Aluminum Shapes, LLC, No. 21-16520 (Bankr. N.J. Aug. 15, 2021); In re LATAM Airlines Grp., SA, No.

3

20-11254 (JLG) (Bank. S.D.N.Y. May 26, 2020); TECT Aerospace Grp. Holdings, Inc., No. 21-10670 (KBO) (Bankr. Del. April 5, 2021). In re ORG GC Midco, LLC, No. 21-90015 (MI) (Bankr. S.D. Tex. Nov. 11, 2021); In re Remora Petroleum, L.P., No. 20-34037 (DRJ) (Bankr. S.D. Tex. Sept. 17, 2020); In re Whiting Petroleum Corp., No. 20-32021 (DRJ) (Bankr. S.D. Tex. June 10, 2020); In re Ravn Air Grp., Inc., No. 20-10755 (BLS) (Bankr. D. Del. May 18, 2020); In re PES Holdings, LLC, No. 19-11626 (KG) (Bankr. D. Del. Sept. 19, 2019).

9.  Since being retained, Riveron has worked closely with the Debtors' management and other professionals retained by the Debtors in these Chapter 11 Cases, and has become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations.

**The Debtors' Prepetition Marketing Efforts**

10.  As described in the Motion, the Debtors have recently suffered operational losses stemming from, among other things, underperforming retail locations, the continued growth of online shopping and industry competition, inflation and macroeconomic headwinds, and difficulties raising capital in an amount sufficient to meet their liquidity needs and fund operations. In this context, in the months leading up to the filing, the Debtors began exploring restructuring alternatives and, with the assistance of Riveron and their other advisors, began marketing their assets and soliciting bids for a value maximizing transaction.

11.  To assist with the marketing process, Riveron immediately began working with Bank of America, N.A., the Debtors' prepetition secured lender under the Debtors' ABL Facility, to prepare a cash collateral budget and cash flow forecast to support the execution of a potential transaction. Riveron also conducted an efficient and robust marketing of the Debtors' assets on the expedited timeline required by the Debtors' liquidity constraints and available funding. The Debtors and Riveron focused on soliciting two types of proposals from potential bidders: (i) bids

to purchase the Debtors' assets at a going concern value, and (ii) bids from third-party consultants to conduct the wind-down, closure, and liquidation of all of the Debtors' retail stores and store-level inventory and assets.

12. During the marketing process, it became apparent that proposals to purchase the Debtors' assets at a going concern value could not exceed the projected proceeds that would be realized by conducting the Store Closing Sales and liquidating the Store Closure Assets. Accordingly, the Debtors and their advisors focused their efforts on identifying third-party consultants to evaluate and conduct the Store Closing Sales and to prepare each store for turnover to the applicable landlords—all on terms that would maximize recoveries for the Debtors' stakeholders.

13. The Debtors solicited proposals from various third-party consultants and held diligence sessions to determine which consultant possessed the requisite skills, resources, and experience to perform the Debtors' large-scale going out of business sales in a controlled, efficient process. The Debtors received three formal bids. In order to ensure that the Debtors achieved the most value maximizing proposal available, the Debtors spent weeks negotiating material economic improvements to each proposal. Notably, each proposal contemplated running the Store Closing Sales through a chapter 11 process.

14. Following extensive negotiations, the Debtors' determined that the proposal submitted by the Consultant represented the most value maximizing transaction available. A number of considerations led to this conclusion, including, among others: the Consultant's proposal would result in the highest net cash flow to the Debtors and their estates in the chapter 11 process; and the Consultant's proposal presents minimal execution risk, considering the

Consultant's previous experience and familiarity with liquidating the Debtors' retail store locations.

15. The Debtors and the Consultant engaged in arm's-length negotiations on the terms of the Consultant's retention and, on April 26, 2024, the parties entered into the Consulting Agreement. Pursuant to the Consulting Agreement, the Consultant will serve as the exclusive agent to the Debtors in connection with implementing the Store Closing Sales through these Chapter 11 Cases.

### The Assumption of the Consulting Agreement Is A Sound Exercise Of The Debtors' Business Judgement

16. I believe that the assumption of the Consulting Agreement represents a reasonable exercise of the Debtors' business judgment. I understand that the Consultant has extensive expertise in conducting liquidation sales and can oversee and assist in the management and implementation of the Store Closing Sales in an efficient and cost-effective manner.

17. Assumption of the Consulting Agreement will enable the Debtors to utilize the skills and resources of the Consultant to efficiently conduct the Store Closing Sales for the benefit of all stakeholders. Importantly, I believe that if the Consulting Agreement is not assumed on an interim basis, there could be substantial harm to all stakeholders. For example, the Debtors would lose the benefit of the momentum and preparation for the Store Closing Sales that was achieved prepetition. Moreover, given the number of Stores and complexities related to administering the Store Closing Sales, I believe that the Debtors could not retain a liquidator who would conduct the Store Closing Sales as efficiently and effectively as the Consultant.

18. Based on my experience, I believe that the terms of the Consulting Agreement are reasonable and the Debtors' selection process has ensured that the Consultant's fees are reasonable and market based. I also believe that the Consulting Agreement was entered into by the Consultant

and the Debtors without collusion, in good faith, and from arm's-length bargaining positions. Further, I believe that the terms and conditions set forth in the Consulting Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their creditors under any applicable laws.

### The Store Closing Procedures Are Fair And Reasonable

19. Based on my familiarity with other retail chapter 11 debtors, I believe that implementing the guidelines for conducting the Store Closing Sales (the "**Store Closing Procedures**") attached as **Schedule 2** to the Motion will provide the best and most efficient means for the Debtors to liquidate their store-level inventory and assets. Any interruption or delay in the Debtors' ability to implement the Store Closing Sales will cause serious and irreparable harm to their estates. The sooner the Stores are closed and the inventory at the Stores is liquidated, the more cash the Debtors will recover for the benefit of their stakeholders.

20. In addition, immediate approval of the Store Closing Procedures and the assumption of the Consulting Agreement is required so that the Consultant can immediately begin the Store Closing Sales. The Debtors expect that the announcement of the Store Closing Sales will result in difficulty retaining employees at the Stores. In short, the longer the delay in commencing the Store Closing Sales, the more difficult it will be for the Debtors to maximize the results of the Store Closing Sales.

### CONCLUSION

21. Based on the foregoing, I believe that the I believe that the Consulting Agreement and the Store Closing Procedures set forth in the Motion: (a) will provide a value maximizing transaction for the Debtors' estates and stakeholders; (b) are generally consistent with other procedures previously approved in chapter 11 cases involving retail debtors; and

7

(c) are appropriate under the circumstances. Given the details described above and based on my experience as a restructuring professional and involvement in other sales transactions, I believe that the relief granted in the Motion should be approved.

[*Remainder of Page Left Intentionally Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 2nd day of May, 2024        Respectfully submitted,

<u>/s/ Colin M. Adams</u>
Colin M. Adams
Practice Lead
Riveron RTS, LLC

*Proposed Financial Advisor to the Debtors*

9