## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEW RUE21 HOLDCO, INC., *et al.*,[1] | Case No. 24-10939 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>**June 6, 2024 at 10:30 a.m. (ET)** |
| | **Objection Deadline:**<br>**May 29, 2024 at 4:00 p.m. (ET)** |

## DEBTORS' FIRST OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY EFFECTIVE AS OF THE REJECTION DATE AND ABANDON PERSONAL PROPERTY

**ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND ITS REJECTED LEASE IDENTIFIED ON EXHIBIT 1 TO THE PROPOSED ORDER**

The debtors and debtors in possession in the above-captioned cases (the "Debtors") hereby file this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing, but not directing, the Debtors to (i) reject those certain unexpired leases of nonresidential real property (collectively, the "Rejected Leases") set forth on **Exhibit 1** to the proposed form of order, effective as the date set forth for each Rejected Lease on **Exhibit 1** (the "Rejection Date"), and (ii) abandon, effective as the Rejection Date, any personal property of the Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "Personal Property") that remains, as of the Rejection Date, on any of the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, are New rue21 Holdco, Inc. (4668), r21 Holdings, Inc. (1618), New rue21 Intermediate, Inc. (9166), New rue21, LLC (4521), New RSC, LLC (4690), and r services llc (9425). The Debtors' headquarters is located at 800 Commonwealth Drive, Warrendale, PA 15086.

premises (collectively, the "Premises") subject to the Rejected Leases.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are sections 105(a), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. On May 2, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On May 13, 2024, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in the Chapter 11 Cases. *See* D.I. 134.  No request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of Michele Pascoe in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 19] (the "First Day Declaration").[2]

## RELIEF REQUESTED

7.      By this Motion, to preserve and maximize the value of their estates, the Debtors, in an exercise of their business judgment, seek to reject the Rejected Leases, effective as of the Rejection Date, and abandon any personal property of the Debtors, including, but not limited to, furniture, fixtures, and equipment that remains, as of the Rejection Date, on the Premises subject to the Rejected Leases, as applicable.

## REJECTION OF UNEXPIRED LEASES

### A.      Rejection of the Unexpired Leases

8.      rue21 is a specialty fashion retailer of apparel and accessories.  Headquartered in Warrendale, Pennsylvania, the Debtors have two primary units: a retail store business and an e-commerce business.  Through their retail business, the Debtors operate over 540 leased Stores in various strip centers, malls, and outlets across 45 states throughout the United States.

9.      In the months leading up to the Petition Date, the Debtors and their advisors began exploring restructuring alternatives and, with the assistance of their advisors, began marketing their assets and soliciting bids for a value maximizing transaction.  The Debtors and their advisors

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the First Day Declaration.

focused their efforts on identifying third-party consultants to evaluate and conduct large-scale store closing sales on a "going out of business" basis (the "Store Closing Sales") and to prepare each store for turnover to the applicable landlords—all on terms that would maximize recoveries for the Debtors' stakeholders. The Debtors solicited bids from various third-party consultants and, prior to the Petition Date, the Debtors and Gordon Brothers Retail Partners, LLC ("Gordon Brothers") entered into that certain *Store Closing Consulting Agreement*, dated as of April 26, 2024, under which Gordon Brothers is serving as the exclusive agent to the Debtors in connection with the Store Closing Sales. The Debtors obtained interim approval to implement the Store Closing Sales at a hearing held on May 3, 2024.[3]

10.     A vast majority of the Store Closing Sales are currently underway. However, in order to maximize value for the Debtors' estates, by this Motion, the Debtors seek to reject 51 Rejected Leases that govern the Debtors' occupancy of certain stores at which Store Closing Sales were either not held or will have concluded no later than the Rejection Date.

11.     After careful review, the Debtors have identified the Premises as space that they no longer need as such leases are no longer relevant to the Debtors' business affairs and are not otherwise beneficial to their estates. Since the Debtors are not conducting Store Closing Sales at the relevant Premises, maintaining the Rejected Leases during these Chapter 11 Cases constitutes a drain on the Debtors' liquidity. The Debtors will realize an immediate benefit in terms of financial liquidity upon the termination of operations at the Premises and subsequent rejection of the Rejected Leases, thereby avoiding the accrual of unnecessary administrative expenses for rent payment. Accordingly, the Debtors have determined that rejecting the Rejected Leases, effective

---

[3]     See *Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 77].

as of the Rejection Date, is an appropriate exercise of their business judgment and in the best interest of their estates.

**B.      Abandonment of Any Personal Property at the Premises**

12.      As part of the process of abandoning the Premises subject of the Rejected Leases, the Debtors removed any property that had more than *de minimis* value.  However, there may be certain Personal Property remaining at the premises.  Relative to its value, the Debtors expect that it will be difficult or expensive to remove and/or store the Personal Property such that the economic benefits of removing and/or storing some or all of the Personal Property will be exceeded by the attendant costs thereof.  Therefore, in connection with abandoning and surrendering the Premises as of the Rejection Date, the Debtors intend to abandon the Personal Property, and, accordingly, request Court approval to do so effective as of the Rejection Date.

## BASIS FOR RELIEF

**I.      Rejection of the Rejected Leases effective as of the Rejection Date Reflects the Debtors' Sound Business Judgment.**

13.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  As courts have held, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 *Collier on Bankruptcy* ¶ 365.01[1] (15th ed. 1993)).

14.      The standard applied to determining whether the rejection of an unexpired lease should be authorized is the "business judgment" standard.  *See Sharon Steel Corp. v. Nat'l Fuel*

*Gas Distr. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

15.     The business-judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor in possession's business judgment to reject a lease. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Riodizio*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

16.     Upon finding that the Debtors have exercised their sound business judgment in determining that rejection of the Rejected Leases is in the best interests of the Debtors and their estates, the Court should approve the proposed rejections under section 365(a) of the Bankruptcy Code. *See, e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary

circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease. *See*, *e.g.*, *Sharon Steel Corp.*, 872 F.2d at 39–40.

17.     As an integral component of their efforts to preserve and maximize the value of their estates and reduce their potential administrative claim exposure in these Chapter 11 Cases by, among other things, eliminating unnecessary costs, the Debtors have determined, in their business judgment, that the Rejected Leases are burdensome and provide no economic value to their estates. The Rejected Leases are unnecessary to the continued conduct of the Store Closing Sales and, if not rejected, could impose onerous obligations on the Debtors and their estates under agreements that are not necessary to their chapter 11 efforts. The Debtors also believe that any continued expense in maintaining the Rejected Leases and attempting to market such agreements would likely outweigh, if not eclipse, any benefit in attempting to identify a potential acquirer of the Rejected Leases and unnecessarily deplete assets of the Debtors' estates, to the detriment of creditors. In contrast, rejection of the Rejected Leases will represent a significant cost savings to the Debtors' estates moving forward.

18.     To avoid paying any unnecessary expenses related to the Rejected Leases, the Debtors seek to reject the Rejected Leases effective as of the Rejection Date. The Court has routinely authorized a debtor's retroactive rejection of unexpired leases. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004); *see also In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (rejection permitted effective as of the date of the motion or the date the premises surrendered). Generally, courts have permitted retroactive rejection of an unexpired lease when

the non-debtor party to the agreement was given definite notice of the intention to reject. *See*, *e.g.*, *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 21, 2006).

19.     The facts in these Chapter 11 Cases and the balance of the equities favor the Debtors' rejection of the Rejected Leases effective as of the Rejection Date.  Absent retroactive rejection, the Debtors may incur unnecessary administrative charges for leases that are not necessary to the Debtors' ongoing wind down of their brick-and-mortar operations.  Moreover, the counterparties to the Rejected Leases (collectively, the "Counterparties") will not be unduly prejudiced if the Rejected Leases are rejected effective as of the Rejection Date because the Debtors have served this Motion on the Counterparties and/or their agents or representatives by electronic mail and/or facsimile and by overnight mail, stating that the Debtors intend to reject the Rejected Leases effective as of the Rejection Date.  Furthermore, the Debtors have, on or before the Rejection Date, turned over access to the premises to the Counterparty or its representative and abandoned the premises, and in conjunction therewith indicated that they were unequivocally surrendering possession as a result thereof.  Therefore, based on the Debtors' need to eliminate the potential incurrence of administrative claims against their estates, and to avoid the potential accrual of any further obligations under the Rejected Leases, the Debtors respectfully submit that the retroactive rejection of the Rejected Leases as of the Rejection Date is appropriate.

20.     In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Leases under section 365(a) of the Bankruptcy Code, effective as of the Rejection Date, is a sound exercise of their business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

## II.     Authorizing the Debtors to Abandon Any Personal Property Remaining at the Premises as of the Rejection Date is Appropriate.

21.     In the event that any Personal Property does remain on the Premises as of the Rejection Date, the Debtors request authority to abandon that Personal Property, pursuant to section 554(a) of the Bankruptcy Code, with such abandonment being effective as of the Rejection Date.

22.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare.  *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986).  Neither of these limitations is relevant in this case.

23.     The Debtors submit that any abandoned Personal Property is of inconsequential value or burdensome to the Debtors' estates to remove.  Among other things, the Debtors believe that the cost of retrieving, marketing, and reselling the abandoned Personal Property—to the extent there is any—outweighs any recovery that the Debtors and their estates could reasonably hope to attain for such Personal Property.  Moreover, the Debtors have determined that the remaining Personal Property does not pose a threat to public health or safety.  As a result, the Debtors have determined, in their business judgment, that the abandonment of any such Personal Property, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors.

## **RESERVATION OF RIGHTS**

24.     Nothing contained herein should be construed as a waiver of any of the Debtors' rights, defenses, or counterclaims with respect to any of the Rejected Leases.  Nor does anything contained herein constitute an acknowledgement that a particular Rejected Lease constitutes an unexpired lease of nonresidential real property under section 365 of the Bankruptcy Code and has not otherwise expired by its own terms or upon agreement of the parties as of the date hereof.

## **NOTICE**

25.     Notice of this Motion has been provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Debtors' Prepetition ABL Agent; (iii) counsel to the Debtors' Prepetition Term Loan Agent; (iv) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (v) the Counterparties (via overnight delivery); and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

Dated: May 15, 2024
     Wilmington, Delaware        **YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shane M. Reil*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph Brandt (admitted *pro hac vice*)
Jessica D. Graber (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com
jgraber@willkie.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

11